**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Wendy Gayle Ebeling,

Plaintiff,

v.

Commissioner of Social Security,

Defendant.

No. CV-25-00406-TUC-JGZ (EJM)

**REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff Wendy G. Ebeling's Opening Brief (Doc. 17). Defendant filed his Answering Brief ("Response") (Doc. 19), and Plaintiff replied ("Reply") (Doc. 20). Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). Compl. (Doc. 1).

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Markovich for Report and Recommendation. Based upon the pleadings of the parties and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Commissioner.

## I. BACKGROUND

### *A. Procedural History*

On April 14, 2022, Plaintiff protective filed a Title XVI application for Supplemental Security Income ("SSI"), and on April 29, 2022, Plaintiff protectively filed

[1] Rules of Practice of the United States District Court for the District of Arizona.

a Title II application for Social Security Disability Insurance Benefits ("DIB"). *See* Administrative Record (AR) at 15, 65, 82, 99–100, 108, 115, 243, 253, 259. Both applications alleged disability as of September 1, 2016, due to scoliosis, arthritis, severe anxiety, and depressive disorder. *See* Administrative Record (AR) at 15, 18, 65, 67–8, 70–2, 82–3, 91, 99–102, 105, 108–11, 115, 295, 304. The Social Security Administration (SSA) initially denied Plaintiff's applications on November 22, 2022. *Id.* at 15, 82–99, 123–31. On January 13, 2023, Plaintiff filed a request for reconsideration, and on June 23, 2023, SSA denied Plaintiff's application upon reconsideration. *Id.* at 15, 100–15, 142–43, 145–59. On July 14, 2023, Plaintiff filed her request for hearing. *Id.* at 15, 160–61. On March 8, 2024, a telephonic hearing was held before Administrative Law Judge ("ALJ") Tin Tin Chen. *Id*. at 15, 32–64. At the administrative hearing, counsel sought to amend Plaintiff's onset date to August 15, 2019. AR 15, 36. On May 16, 2024, the ALJ issued an unfavorable decision. *Id*. at 12–27. In that decision, the ALJ denied Plaintiff's request to amend the onset date. *Id*. at 15. On July 15, 2024, Plaintiff requested review of the ALJ's decision by the Appeals Council, and on May 19, 2025, review was denied. *Id.* at 1–11, 342–44. On July 21, 2025, Plaintiff filed this cause of action. Compl. (Doc. 1).

***B. Factual Background***

Plaintiff was thirty-eight (38) years old at the time of the alleged onset of her disability, and forty-five (45) years old at the time of her administrative hearing. AR 15, 18, 26, 32, 34, 65, 67–68, 70–72, 82–83, 91, 99–102, 108–10, 115, 243, 253, 259, 271, 304. Plaintiff graduated from high school and worked as a cashier prior to the alleged onset of her disability. *Id.* at 26, 55–56, 65, 82, 99–100, 102, 104, 109, 115, 276, 278.

**1. Plaintiff's Hearing Testimony**

Plaintiff estimated that she received a Serious Mental Illness ("SMI") designation in October 2021. AR 38. She did not recall the process to receive an SMI designation beyond her treating physicians completing forms and sending them in. *Id*. Plaintiff further testified that she cared for her mother until her passing in December 2017. *Id.* at 38–39. Plaintiff explained that she finally sought treatment in May 2020 because of her best

friend's constant encouragement and insistence. *Id.* at 39. Plaintiff confirmed that she had health insurance during this time. *Id.* at 40. Plaintiff further explained that after she initially sought treatment due to her friend's encouragement, the availability of telehealth was what allowed her to continue treatment. AR 40.

Plaintiff testified that the last time she had left the house before the March 8, 2024, hearing was the previous Sunday, March 3, 2024. *Id.* at 40–41. Plaintiff reported accompanying her best friend while the latter ran errands, but Plaintiff noted that she did not get out of the car while her friend went into stores. *Id.* at 41. Plaintiff confirmed that she was okay staying in the car with her dog. *Id.* Prior to her March 3rd outing, Plaintiff was uncertain of the last time she had left her house. *Id.* at 41–42. She thought that she might have gone to her friend's home for her friend's grandson's birthday in early December of 2023. AR 41–42. Plaintiff testified that her friend picked her up and took her back to her apartment for dinner with her friend's son, daughter-in-law, and grandson in celebration of his 5th birthday. *Id.* at 42. Plaintiff estimated that she stayed for approximately three (3) hours. *Id.*

Plaintiff testified that prior to the December 2023 dinner, she had left the house in March 2023. *Id.* Plaintiff stated that her friend came to pick her up and took her to Eegee's for a Lucky Lime Flavor of the Month Eegee. *Id.* Plaintiff explained that they went through the drive-through and immediately returned to her house, then sat in her friend's van to eat their Eegee's. AR 42. Plaintiff confirmed that it was the same friend who took her on each of these outings. *Id.* at 42–43.

Plaintiff testified that the last time she was in public was in December 2022. *Id.* at 43. Plaintiff reported that it was again for her friend's grandson's birthday. *Id.* at 43. Plaintiff stated that the party was held at Peter Piper Pizza. *Id.* Plaintiff noted that she remained at the table chatting with her friend, who was watching out for her, and her grandson's maternal grandmother. AR 43. Plaintiff further testified that she was able to stay for the entire party, estimating that it lasted two (2) hours, after which her friend drove her home. *Id.* at 43–44.

Plaintiff explained that she does not necessarily suffer panic attacks in public, but rather they occur before she is able to leave her house. *Id*. at 44, 47. Plaintiff struggled to remember the last time she had left her home without her friend, and posited that there was one time in 2022 that she walked from "[her] house to the gas station to buy a lottery ticket and then walk[ed] home." *Id*. Plaintiff estimated that the outing took twenty (20) minutes. *Id*. Plaintiff testified that it was in the Fall, the lottery drawing had gotten very high, she felt that walking to the gas station was a way to get out while encountering a minimum number of people, and upon arrival observed through the window that there were not many customers. AR 45. Plaintiff expressed that she was able to convince herself that she could do it and successfully obtained a lottery ticket. *Id*. Plaintiff couldn't recall a time where she had to abandon a trip; however, she did have to step outside from a holiday gathering at her friend's house because the noise was overwhelming. *Id*. at 46–47. Plaintiff estimated that this occurred in 2021. *Id*.

Plaintiff explained that she has forced herself to attend some medical appointments, but foregoes any social appointments. *Id*. at 47–48. She described feeling nauseous before leaving the house. *Id*. at 47. Plaintiff confirmed that she was able to attend an in-person dermatology appointment, but described it as a very quiet environment with only one other patient, and she took an extra dose of her anti-anxiety medication. *Id*. at 48. She further explained that she received her COVID vaccine because she understood its monumental importance; however, she made clear that if the situation will involve seeing many more people, she is unable to make herself leave the house. *Id*. Plaintiff testified that she is able to obtain her food, prescriptions, and other household and personal necessities via Walmart and Fry's deliveries, which are contactless. AR 49.

Upon questioning by her attorney, Plaintiff reported having had a full-on panic attack at home, when she was trying to leave the house. *Id*. Plaintiff described the attacks as causing difficulty breathing; her stomach to "crunch"; and nausea. *Id*. Plaintiff denied throwing up or passing out during an attack. *Id*. at 50. Plaintiff noted that she tries to do deep breathing to manage the attacks, and her dog helps her. *Id*. Plaintiff testified that she

had a panic attack the prior Sunday before going out with her friend. AR 50. The ALJ initially objected to counsel's line of questioning asserting that she had "asked [Plaintiff] extensively about Sunday's trip." *Id.* When counsel explained that although the ALJ had questioned Plaintiff about the outing itself, she had not inquired about what happened at home prior to leaving the house. *Id.* The ALJ relented long enough to allow Plaintiff to testify that her friend encouraged her for between fifteen (15) and twenty (20) minutes, and agreed to allow Plaintiff to bring her dog, before Plaintiff was able to leave her home. *Id.* at 51. The ALJ then interjected asking how much encouragement was required before Plaintiff went out to buy a lottery ticket. *Id.* Plaintiff testified that it took her approximately a day to work up the courage to leave, explaining that she wants to go out, but does not want to encounter people. AR 51. Plaintiff confirmed that she took her dog with her on the walk to the gas station, as well. *Id.* at 51.

The ALJ further questioned Plaintiff regarding her trip to the dermatologist. *Id.* at 51–52. Plaintiff reported that she did not bring her dog on that occasion and had to ride the medical transport to and from the appointment; however, there were no other passengers in the vehicle. *Id.* at 52. Counsel asked whether Plaintiff had to take more anti-anxiety medication than was prescribed. *Id.* Plaintiff explained that her prescription allowed for double her normal dose at that time, so although she took an extra dose, it was not beyond the limits of the prescription. AR 52. Plaintiff further explained that her current dose is higher now. *Id.* Plaintiff did not have any adverse side effects from the higher dose. *Id.* at 52–53. Plaintiff confirmed that she avoids putting herself in situations which would cause her to panic. *Id.* at 53. Plaintiff reiterated that it took her a full day to be able to take the twenty (20) minute walk for a lottery ticket. *Id.*

## **<u>2. Plaintiff's Medical Records</u>**

### **a. Treatment Records**

Plaintiff has received extensive mental health treatment—including psychiatric, therapeutic, and pharmacological care. Her treatment records begin in May 2020, and extend through February 2024. AR 394–418, 421–29, 432–36, 440–62, 467–78, 486–502,

511–14, 521–37, 539–701, 709–97. Plaintiff's records reflect ongoing treatment for major depressive disorder, severe; generalized anxiety disorder; and agoraphobia with panic attacks, as well as potential attention deficit hyperactivity disorder (ADHD) and autism spectrum disorder. *See id.*

**b. Noelle Rohen, Ph.D.**

On August 15, 2019, Noelle Rohen, Ph.D. performed a consultative examination of Plaintiff upon request of the Arizona Department of Economic Security. AR 352–57. Dr. Rohen noted that Plaintiff's aunt transported her to the evaluation, and Plaintiff reported anxiety around returning to work, as well as some depression. *Id.* at 352. Regarding Plaintiff's psychiatric history, Dr. Rohen observed that Plaintiff had functioned well before her mother's passing. *Id.* Plaintiff described her mother as a "buoying force in her life." *Id.* Dr. Rohne noted that "[d]epression has been consistent in severity since her mother's death[,]" with Plaintiff expressing hopelessness during her mother's late illness and continued upset. *Id.* Plaintiff reported sleeping poorly with "primary and middle insomnia"; poor daytime energy levels; diminished motivation for hygiene; decent self-esteem, with some second-guessing; reduced appetite; and steady weight. AR 352. Plaintiff denied suicidal ideation, as well as overt hallucinations. *Id.* Plaintiff suggested that she thinks she hears music as an undertone to the cooler noise approximately twice per week. *Id.*

Dr. Rohen noted that Plaintiff's anxiety causes her to avoid crowds "for fear of [an] inability to escape or being trapped, pressed in upon." *Id.* at 353. Dr. Rohen also observed that Plaintiff experienced "chronic social phobia[,]" although she had managed to form meaningful long-term friendships. *Id.* Dr. Rohen further noted, however, that Plaintiff does not make new friends, and is guarded with her current friends, fearing judgment. AR 353. Dr. Rohen perceived that Plaintiff was fearful of seeking treatment, reporting that Plaintiff "does not like to talk about her mother's death or her own anxiety[,]" and fears that "[e]verything [she has] done is wrong." *Id.*

Dr. Rohen observed that anxiety was not a problem when Plaintiff worked as a

cashier previously. *Id.* Dr. Rohen noted that Plaintiff is currently living in her childhood home, which is simultaneously painful and comforting. *Id.* at 354. Plaintiff described her days as sitting at home, watches television or Netflix sometimes, and keeps up with housework. *Id.* Plaintiff reported that she had a roommate with a car; Plaintiff does not own a vehicle. AR 354. Plaintiff further reported that her roommate will get groceries for her, or will drive Plaintiff to the store; however, Plaintiff cannot show during the day and must avoid crowds. *Id.* Dr. Rohen noted that Plaintiff has contact with an aunt and uncle; her sister who lives in Australia; and some close friends. *Id.* Plaintiff socializes with her friends on the telephone, and occasionally they will come to her house. *Id.*

Dr. Rohen described Plaintiff's appearance during the mental status examination as follows:

> Hygiene and grooming appeared to be basic. Hair was pulled back and it is not clear it had been shampooed. Fingernails were clean and bitten well past the quick. Eye contact was good, and Ms. Eberling was very pleasant and cooperative with the evaluator. Affect was full range, often with heavy tears in discussing her grief, but also with genuine mirth during the MMSE. She was clearly anxious initially but this attenuated a god bit throughout the exam. thoughts were linear and coherent, and retrograde memory appeared adequate to provide history. Her fund of knowledge was estimated to be average. The rate and flow of Ms. Eberling's speech were within normal limits. Motor activity was within normal limits on casual observation.

*Id.* Dr. Rohen administered the Folstein Mini Mental Status Examination to Plaintiff. AR 354. Dr. Rohen reported that Plaintiff "scored 26 out of a possible 30 on the exam, and was found to be alert and oriented but to month (July)." *Id.* Dr. Rohen described Plaintiff "demonstrated adequate abstracting ability through determination of item similarity[;] . . . readily completed a serial subtraction task[;] . . . erred in completing the first step of a three-step instruction[;] . . . [and] was able to register three unrelated words presented verbally after one presentation, and recall one of them after a brief delay and interference task." *Id.* Dr. Rohen did not find any inconsistencies, and found Plaintiff to be an adequate historian. *Id.*

Dr. Rohen diagnostic impressions included: 1) Unspecified Depressive Disorder

complicated by bereavement; and 2) Generalized Anxiety Disorder with features of social anxiety disorder, agoraphobia, performance anxiety, and interpersonal guardedness. *Id.* Dr. Rohen concluded that Plaintiff's anxiety "appears to have the potential to cause claimant the most impairment in the workplace[,] [with] [j]ust the fact that she is reticent to leave the home may be a problem, though she does so when needed." AR 354. Dr. Rohen observed that Plaintiff was "visibly anxious today and this may negatively affect her ability to concentrate and perform under pressure – which is one thing she actively fears." *Id.* at 354–55. Finally, Dr. Rohen noted Plaintiff also fears rejection. *Id.* at 355.

Dr. Rohen completed a Psychological/Psychiatric Medical Source Statement. *Id.* at 356–57. She opined that Plaintiff's condition would impose limitations for twelve (12) months. *Id.* at 356. Regarding understanding and memory, Dr. Rohen reported that Plaintiff performed poorly on a recall task. AR 356. As for sustained concentration and persistence, Dr. Rohen opined that Plaintiff's performance was "[a]dequate for today's demands though she appeared to complete the first part of the interview under duress." *Id.* Dr. Rohen further opined that Plaintiff's "[h]igh anxiety has the potential to compromise focus and persistence." *Id.* Regarding social interactions, Dr. Rohen noted that Plaintiff "can appropriately dress, groom, and relate from a social skills perspective, but reports avoidance of crowds or situations in which she may experience rejection or negative judgment." *Id.* Dr. Rohen acknowledged that she could not "objectively verify [this], but [Plaintiff's] objective presentation of high anxiety supports her allegations." *Id.* Under Adaptation, Dr. Rohen opined that Plaintiff was capable of "learn[ing] new tasks and avoid[ing] hazards, but with her complaints of anxiety, may be more effective and more persistent in a lower demand and more static position." AR 356. Finally, Dr. Rohen opined that Plaintiff was capable of managing benefit payments in her own name. *Id.*

**c. Jeri B. Hassman, M.D.**

On August 21, 2019, Jeri B. Hassman, M.D. performed a consultative examination of Plaintiff upon request of the Arizona Department of Economic Security. AR 358–64. Dr. Hassman assessment was focused on Plaintiff's scoliosis and arthritis. *Id.* at 358.

Plaintiff complained of frequent upper-, mid-, and lower-back pain and reported that she was diagnosed with scoliosis around age 13. *Id*. at 358–59. Plaintiff endorsed occasional headaches and tingling of her hands and feet. *Id*. at 359.

Dr. Hassman's physical examination showed multiple benign fibrous moles or cysts across Plaintiff's skin. *Id*. at 359. Dr. Hassman reported that Plaintiff's gait was "perfectly normal without any limp or any complaints of pain[,]" and she was able to stand, walk on her toes, walk on her heels, had nor balance for tandem walking, and was able to hop on either foot without any complaints. AR 359. Dr. Hassman observed that Plaintiff was able to bend over and pick something over from the floor and kneel on either knee without pain. *Id*. Dr. Hassman further reported that Plaintiff was able to dress and undress, as well as get on and off the examining table and in and out of the chair, independently. *Id*. Dr. Hassman noted that Plaintiff had a full range of motion of the cervical spine without pain or tenderness. *Id*.

Dr. Hassman's examination of Plaintiff's heart, lungs, and abdomen was unremarkable. *Id*. Dr. Hassman noted a full range of motion of both upper extremities without pain, with negative Phalen's and Finkelstein's test bilaterally, negative Tinel's sign, "no Hoffman's reflexes or other pathological reflexes[,]" and a negative "Romberg's sign." AR 360. Dr. Hassman observed "a moderate dextroscoliosis of the thoracic spine[,] . . . [with] moderate posterior rotation of the right thoracic spine[,] . . . [and] her right iliac crest was 2 cm higher than the left iliac crest." *Id*. Plaintiff did not exhibit tenderness along her cervical, thoracic, or lumbar spine or paraspinal muscles. *Id*. Dr. Hassman reported a "full range of motion of both lower extremities without pain[,]" and further examination of Plaintiff's lower extremities was unremarkable. *Id*.

Based on her examination, Dr. Hassman completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). *Id*. at 361–63. Dr. Hassman opined that Plaintiff's conditions would not impose a limitation for twelve (12) consecutive months. AR 361.

## II. STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) (citations omitted) (alterations in original).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted). Additionally, the Court will only review issues raised by Plaintiff in this cause of action. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

. . .

. . .

## III. ANALYSIS

### *A. The Five-Step Evaluation*

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). This process is defined as follows: Step One asks is the claimant "doing substantial gainful activity[?]" 20 C.F.R. § 404.1520(a)(4)(i). If yes, the claimant is not disabled. Step Two considers if the claimant has a "severe medically determinable physical or mental impairment[.]" 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. Step Three determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the claimant is not disabled. Step Four considers the claimant's residual functional capacity and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If claimant can still do past relevant work, then he or she is not disabled. Step Five assesses the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If it is determined that the claimant can make an adjustment to other work, then he or she is not disabled. *Id.*

In the instant case, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since September 1, 2016, the alleged onset date[.]" AR 18 (citing 20 CFR 404.1571, *et seq.*; then citing 20 CFR 416.971, *et seq.*). At step two of the sequential evaluation, the ALJ found that "[t]he claimant has the following severe impairments: anxiety disorder and depressive disorder." *Id.* (citing 20 CFR §§ 404.1520(c), 416.920(c)). At step three, the ALJ further found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" *Id.* (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Prior to step four and "[a]fter careful consideration of the entire record," the ALJ determined that "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can tolerate

occasional but superficial interaction with coworkers[;] . . . should never interact with the public[;] . . . can tolerate less than occasional changes in the work environment and work procedures[;] . . . is limited to simple routine tasks[;] . . . [and] must perform work during non-regular business hours to further reduce the occasion for triggering social interactions." *Id.* at 19–20. At step four, the ALJ observed that "[t]ransferability of job skills is not an issue because the claimant's past relevant work is unskilled[.]" *Id.* at 26 (citing 20 CFR §§ 404.1568, 416.968). At step five, the ALJ found that after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" AR 26 (citing 20 CFR §§ 404.1569, 404.1569a, 416.969, 416.969a). Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.* at 27.

***B. Step 3 Analysis***

Plaintiff asserts that "the ALJ's analysis of Plaintiff's 'paragraph B' mental functioning was not supported by substantial evidence." Opening Br. (Doc. 17) at 9. Plaintiff highlights that the ALJ's reliance on Mental Status Examinations "specifically omitt[ed] the Plaintiff's greatest trigger, leaving her home." *Id*. at 17. Plaintiff further asserts that "Plaintiff's significantly limited social circle supports a marked limitation in social interaction." *Id*. (citing *Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001)). Finally, Plaintiff urges that the ALJ's "finding that [Plaintiff's] minimally social, short-duration excursions were 'successful' is not supported." *Id*. Defendant contends that Plaintiff has not met her burden to demonstrate that her limitations rise to the "high level of severity" the listed impairments demand. Response (Doc. 19) at 11. The Court agrees with Plaintiff and finds the ALJ's Step 3 determination is not supported by substantial evidence.

**1. Legal Standard**

When a claimant has "an impairment(s) which meet the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), [the Social Security Administration] will find you disabled without considering your age, education, and work

experience." 20 CFR §§ 404.1520(d), 416.920(d). "The listings describe impairments that are considered 'to be severe enough to prevent an individual from doing any gainful activity.'"[2] *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing 20 CFR § 404.1525(a)). "Each impairment is described in terms of 'the objective medical and other findings needed to satisfy the criteria of that listing.'" *Id.* (citing 20 CFR § 404.1525(c)(3)). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." *Id.* (emphasis in original).

Section 12.04 governs depressive, bipolar, and related disorders, and Section 12.06 governs anxiety and obsessive-compulsive disorders. 20 CFR Pt. 404, Subpt. P, App. 1, § 12.00(B)(3) & (5). With each of these sections, satisfaction of the requirements of paragraphs A and B, or paragraphs A and C, will result in a claimant meeting the listing. 20 CFR Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Under Section 12.06, paragraph A requires medical documentation of one of the three (3) listed disorders. As relevant to Plaintiff, paragraph A(2) provides:

> Panic disorder or agoraphobia, characterized by *one* or both:
>
> a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
>
> b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

20 CFR Pt. 404, Subpt. P, App. 1, § 12.06(A)(2).

Paragraph B requires an extreme limitation in one, or marked limitation of two, of the following areas:

1) understanding, remembering, or applying information;

2) interacting with others;

3) concentrating, persisting or maintaining pace; and

4) adapting or managing oneself.

---

[2] The "listings" refer to the Listing of Impairments delineated in Appendix 1, Title 20, Code of Federal Regulations, Part 404, Subpart P.

20 CFR Pt. 404, Subpt. P, App. 1, § 12.06(B). Alternatively, paragraph C states:

> Your mental disorder in this listing category is "serious and persistent" that is you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial supports, or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 CFR Pt. 404, Subpt. P, App. 1, § 12.06(C). "If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled." *Ford*, 950 F.3d at 1149 (citing 20 CFR § 404.1520(d)).

**2. Analysis**

The ALJ properly stated the requirements of paragraph B, and defined "[a]n extreme limitation [a]s the inability to function independently, appropriately, or effectively, on a sustained basis[,] [and] [a] marked limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis." AR 18–19. She went on to address each of the paragraph B criteria, in turn.

***a. Understanding, remembering, or applying information***

Under this criteria, the ALJ found Plaintiff "has no imitation." AR 19. In support of this finding, the ALJ stated that "[t]he claimant's treatment records do not indicate that the claimant has memory impairment because of her mental impairments." *Id.* She further noted that "[t]he claimant's psychological consultative examination described claimant's thoughts as linear and coherent and that her retrograde memory appeared adequate to provide history." *Id.* (citing AR 354). Plaintiff does not challenge this finding, and the Court will not review it further.

***b. Interacting with others***

The ALJ found that "[i]n interacting with others, the claimant has a moderate limitation." AR 19. The ALJ acknowledged that "[t]he claimant reported that she is only

able to be around one or two people due to her anxiety and she avoids situations where more people will be present." *Id.* (citing Hr'g testimony). The ALJ pointed to treatment records where "the claimant was described as having a cooperative attitude and able to maintain good eye contact" in support of her finding. *Id.* (citing AR 424, 433, 469, 621, 630, 676). As an initial matter, the appointments that included the statement on which the ALJ relied were all conducted via telemedicine or Webex. *See id.* at 421, 435, 469, 621, 629, 675. Each of those appointments occurred while Plaintiff was at home interacting with her provider through a screen. *Id.* Furthermore, each appointment required Plaintiff to interact with a single provider. The ALJ offers no further explanation for this determination. As such, it is not supported by substantial evidence.

At the April 13, 2022, medication check relied on by the ALJ, Plaintiff's GAD7 Screening Score was a 17 which equaled severe anxiety. AR 422–23. Further review of that screening demonstrated that Plaintiff had symptoms of nervousness and anxiety, excessive worrying, irritability, and fear of something awful happening every day. *Id.* Moreover, Plaintiff's treatment records reflect that one of her ongoing challenges and treatment goals is addressing her self-isolation. *Id.* at 394, 398, 405, 407, 496–97, 536, 543, 545, 548–49, 553, 558–59, 575–76, 590, 604, 612, 634, 636, 647, 479, 453, 655, 664, 681, 690, 712, 725, 754, 761–62, 778, 780, 790, 794, 797. She also suffers from a fear of being judged. *See e.g.*, *id.* at 353, 583, 590. Further, she experiences stress and anxiety regarding politics and the cultural climate which make her too anxious to leave the house. *See e.g., id.* at 524–25, 528, 541–42, 588–89, 655–56. Additionally, her support network consists only of her best friend, Peggy, her dog, and occasionally an aunt. *See id.* at 397–98, 402, 410–11, 415–16, 459–60, 469, 472, 476, 488–89, 557–58, 566–67, 572, 575, 588, 598, 602, 611, 615–16, 623, 638–39, 643, 645, 663, 680, 689, 700, 716, 733, 751, 753–54, 758, 761, 776. Treatment records reflect that Plaintiff "has one close friend 'Peggy'[,] . . . [and] has 2 sisters whom she only has occasional contact with." AR 397. Plaintiff has further observed that Peggy is more of a sister to her than her actual sisters. *Id.* at 716. Furthermore, Peggy is the only person with whom Plaintiff feels comfortably leaving the

house. *Id*. at 567. Plaintiff's ongoing social isolation coupled with her very small support describes a difficulty interacting with others that is more than moderate. *See Holohan v. Massanari*, 246 F.3d 1195, 1204 n.3 (9th Cir. 2001). The Court finds the ALJ's reliance on a "cooperative attitude" and "good eye contact" during one-on-one sessions that occurred over videoconference from her home does not constitute substantial evidence to support a finding of a moderate limitation in interacting with others. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

***c. Concentrating, persisting, or maintaining pace***

Regarding concentrating, persisting, or maintaining pace, the ALJ found Plaintiff to have a moderate limitation. AR 19. The ALJ acknowledged Plaintiff's error in following instructions during her consultative examination, and the examiner's opinion that Plaintiff's "anxiety has the potential to compromise focus and persistence." *Id*. (citing AR 354, 356). Yet, the ALJ found the fact that Plaintiff's "attention/concentration was noted to be good during several mental status exams" sufficient to find a moderate limitation. *Id*. (citing AR 621, 630, 676). Plaintiff does not directly challenge this finding. As such, the Court will not review it further despite serious questions regarding whether substantial evidence, in fact, supports it.

***d. Adapting and managing oneself***

The ALJ found that "[a]s for adapting or managing oneself, the claimant has experienced a moderate limitation." AR 19. The ALJ acknowledged that Plaintiff "experiences anxiety symptoms with agoraphobic tendencies and panic attacks." *Id*. (citing AR 575, 602). The ALJ further found, "[h]owever, [Plaintiff] reported manageable symptoms with medication, and she testified to several instances in which she was able to successfully leave her home." *Id*. (citing AR 469, 620–21, and Hr'g testimony). The ALJ also observed that Plaintiff "was also described as well-groomed during mental status exams and noted to have good impulse control." *Id*. (citing AR 399, 621, 630, 676).

An "ALJ [is] not permitted to 'cherry-pick' from . . . mixed [treatment] results to

support a denial of benefits." *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) (quotations and citations omitted). A review of the portions of Plaintiff's medical records cited by the ALJ demonstrates that he failed to choose "data points . . . [that] *in fact* constitute examples of a broader development [sufficient] to satisfy the applicable 'clear and convincing' standard." *Id.* at 1018. The Ninth Circuit has made clear, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citations omitted). The Ninth Circuit has further cautioned that treatment records must "be interpreted with an awareness that improved functioning while being treated and while limiting stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Hutsell v. Massanari*, 259, F.3d 707, 712 (9th Cir. 2001) ("[T]he Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

Plaintiff's symptoms are manageable with her medications because she generally refuses to leave her home and limits her stressors. *See* AR 394, 398, 405, 407, 496–97, 524–25, 528, 536, 541–43, 545, 548–49, 553, 558–59, 575–76, 588–90, 604, 612, 634, 636, 647, 479, 453, 655–56, 664, 681, 690, 712, 725, 754, 761–62, 778, 780, 790, 794, 797. Furthermore, the "several instances" of Plaintiff "successfully" leaving her house relied on by the ALJ equate to six (6) social engagements and two (2) medical procedures in four (4) years. *Id*. at 40–53. Of the six (6) social engagements, two (2) involved riding in Peggy's car, but never getting out; two (2) involved going to Peggy's grandson's birthday celebrations, one of which was only his immediate family whom Plaintiff considers her family of choice and at Peggy's apartment; one (1) involved a short walk, alone, outside, and without any crowds or people; and one was a family Thanksgiving celebration at Peggy's home. *Id*. One of the medical appointments involved receiving the

COVID vaccine and one was a dermatology visit regarding the pathology of lesions on Plaintiff's skin, and in which she was one of two patients and the only passenger in the transport van. *Id*. at 48, 51–52. Eight (8) instances of leaving her home in four (4) years, generally at the behest of her best friend and where she rarely leaves the car, does not support a moderate limitation, rather it suggests a marked or extreme limitation. The Court is also troubled by the ALJ's apparent lack of empathy for Plaintiff during her questioning at the Administrative Hearing. *See id*. at 50–53. The ALJ appeared to have her own ideas about how someone with Plaintiff's medical conditions should act, rather than truly assessing Plaintiff's lived experience. *See* AR 50–53. Reviewing the record as a whole, the ALJ's findings are not supported by substantial evidence. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

***e. Conclusion***

The Court finds that the ALJ findings at step three regarding the paragraph B criteria are not supported by substantial evidence in the record. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). The Court further finds that this error was not harmless.

***D. Remand***

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record

> that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke,* 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings. . . . Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id*. (citations omitted); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Here, the ALJ committed legal error in analyzing the Paragraph B criteria at step three. Although the Court is inclined to recommend directing remand for an award of benefits, Plaintiff requests reversal and remand for further proceedings. Opening Br. (Doc. 17) at 13. Upon remand, the ALJ shall reanalyze **all** of the Paragraph B criteria and make findings consistent with this opinion.

## IV. CONCLUSION

Based on the foregoing, the Court finds the ALJ committed legal error in assessing the Paragraph B criteria at step three. The Court will recommend remanding for reanalysis, including rehearing. The Court further recommends reconsideration of Plaintiff's request to modify her alleged onset date.

## V. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order REVERSING the Commissioner's decision and REMANDING for an award of benefits consistent with this opinion.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections **on or before August 21, 2026**. A party may respond to another party's objections **on or before August 28, 2026**. No replies shall be filed unless leave is granted from the Honorable Jennifer G. Zipps. If objections are

filed, the parties should use the following case number: **CV-25-00406-TUC-JGZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 14th day of August, 2026.

Eric J. Markovich
United States Magistrate Judge